**Michael F. FOWLER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 65A01–0806–CR–313.

Court of Appeals of Indiana.

Jan. 29, 2009.

---

William W. Gooden, Mt. Vernon, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Matthew Whitmire, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Michael F. Fowler ("Fowler") appeals his convictions for Dealing in Methamphetamine, as a Class B felony,[1] and Possession of Methamphetamine, as a Class D felony.[2] We affirm.

### Issues

Fowler presents two issues for review:

I. Whether the trial court abused its discretion in instructing the jury; and

II. Whether there is sufficient evidence to sustain his convictions for Dealing in Methamphetamine and Possession of Methamphetamine.

### Facts and Procedural History

On January 25, 2008, Posey County Deputy Sheriff Tom Latham ("Deputy Latham") was dispatched to the Black River Camps area to investigate a report that a man and woman were making methamphetamine under a bridge. Reportedly, the pair had parked their white pickup truck with blue stripes nearby. Deputy Latham proceeded to the bridge but found no one there. As he traveled in the general area, Deputy Latham saw a white pickup truck with blue stripes at Fowler's residence. Deputy Latham stopped at the residence, and Fowler and Teresa Kloepping came outside. Deputy Jeremy Fortune ("Deputy Fortune") joined them.

Deputy Latham, who has been trained in the identification of clandestine methamphetamine labs, detected a distinct "odor of a meth lab coming from the house."

(Tr. 10.) Deputy Fortune asked Fowler about the odor emanating from his residence, and Fowler responded that there was a "funny" smell that "wasn't a common smell for his house." (Tr. 34.) Fowler indicated that no other person was in the residence, and gave the deputies permission to search it.

Inside the residence, the deputies encountered Darren Matlock ("Matlock"). They also uncovered numerous indications of an active methamphetamine lab. A blue canvass bag in the living room contained pliers, lithium batteries, coffee filters, plastic tubing with methamphetamine residue, drain opener, a Mason jar, salt, starting fluid, and a tool kit. An egg crate box in the kitchen contained camping fuel, an organic solvent, sleeping pills, and Mason jars. On the stove there was a dinner plate with a white powder residue that appeared to Deputy Fortune to be methamphetamine in the drying process. Also present were plastic baggies with the corners cut off.

On the second floor, there was a living area with shelving on which was located an active seed jar (containing lithium, pseudoephedrine, and organic solvents) and an active HCL generator. The shelf also contained one baggie with 0.41 grams of methamphetamine inside. Next to a weight bench, there sat a white bag with two HCL generators inside it.[3] One of the containers was emitting vapors.

On January 28, 2008, the State charged Fowler with three offenses. One charge was dismissed and, on April 24, 2008, Fowler was brought to trial on the charges of Dealing in Methamphetamine and Pos-

---

1. Ind.Code § 35–48–4–1.1.

2. Ind.Code § 35–48–4–6.1(a).

3. Deputy Fortune described an HCL generator as follows: "you pour salt into a common soda bottle like you would buy at a convenience store, and pour sulfuric acid or liquid fire on top of it, and it creates gas that is put into the jar that makes, that salts out the methamphetamine." (Tr. 48.)

session of Methamphetamine. The State's theory was that Fowler assisted Matlock in the manufacture of methamphetamine, and the jury was instructed accordingly.

On April 25, 2008, Fowler was convicted as charged. On June 6, 2008, the trial court sentenced Fowler to eight years imprisonment for Dealing in Methamphetamine and one and one-half years for Possession of Methamphetamine, to be served concurrently. Two years were suspended to probation. Fowler now appeals.

## Discussion and Decision

### I. Jury Instruction

■ Fowler contends that the trial court erred by giving Final Instruction 7, an accomplice instruction, which included the following language objectionable to Fowler:

But presence at the scene of the crime and failure to oppose the crime's commission are factors which may be considered in determining whether there was aiding, inducing, or cause [sic] another to commit the crime.

(App.10.) In particular, Fowler argues that the instruction "called the jury's attention to the defendant's presence and apparent failure to oppose commission of the crime" and "emphasized [that evidence] to the exclusion of other facts that may or may not point to the defendant's guilt." Appellant's Brief at 16. Fowler maintains that this emphasis on particular evidence is erroneous according to *Dill v. State*, 741 N.E.2d 1230 (Ind.2001), *Ludy v. State*, 784 N.E.2d 459 (Ind.2003), *Ham v. State*, 826 N.E.2d 640 (Ind.2005), and *Marks v. State*, 864 N.E.2d 408 (Ind.Ct.App.2007).

■ "The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Dill*, 741 N.E.2d at 1232.

Jury instruction is a matter assigned to trial court discretion, and an abuse of that discretion occurs when instructions, taken as a whole, mislead the jury as to the applicable law. *Ham*, 826 N.E.2d at 641. The courts of this State have "long disapproved" instructions that unduly "emphasize one particular evidentiary fact, witness, or phase of the case." *Id.* at 641–42. "An instruction as to what evidence warrants an inference of guilt clearly invades the jury's province." *Crawford v. State*, 550 N.E.2d 759, 761.(Ind.1990).

■ In *Dill*, the Court held that it was error to instruct the jury that a defendant's flight after the commission of a crime, although not proof of guilt, may be considered as evidence of consciousness of guilt. "[A]lthough evidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence." 741 N.E.2d at 1232. The Court found "no reasonable grounds to justify focusing the jury's attention on the evidence of flight" and further found that the challenged instruction had "significant potential to mislead." *Id.*

In *Ludy*, the Court held that the trial court erred in instructing the jury that "[a] conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." 784 N.E.2d at 460. The instruction was problematic for at least three reasons: first, it unfairly focused the jury's attention on and highlighted a single witness's testimony; second, it presented a concept used in appellate review that is irrelevant to a jury's function as fact-finder; and third, by using the technical term "uncorroborated,"

the instruction could mislead or confuse the jury. *Id.* at 461.

In *Ham*, our Supreme Court held that the trial court erred in instructing the jury as follows: "A defendant's refusal to submit to a chemical test may be considered as evidence of intoxication." 826 N.E.2d at 641. The Court agreed with the defendant that the instruction misled the jury by "unnecessarily emphasizing a specific piece of evidence." *Id.* More recently, in *Marks*, a panel of this Court found error in the giving of an instruction on impairment that provided: "Evidence of the following can establish impairment: (1) the consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcoholic beverage on the breath; (5) unsteady balance; (6) failure of field sobriety tests; (7) slurred speech[.]" 864 N.E.2d at 410. This Court concluded that "the instruction in this case suffers from the same infirmities as those in *Dill, Ludy*, and *Ham*," *Id.* at 411.

 Fowler urges this Court to find that Final Instruction 7 is likewise infirm. However, it is noteworthy that we are here concerned with an accomplice liability instruction as opposed to an instruction that highlights particular evidence offered by the State to establish the commission of a crime. Accomplice liability is not established as a separate crime, but merely a separate basis of liability for the crime charged, *Hampton v. State*, 719 N.E.2d 803, 807 (Ind.1999). Where the facts raise a reasonable inference that the crime was carried out with an accomplice, it is appropriate for the trial court to give an accomplice liability instruction. *Id.*

Final Instruction 7 did not highlight particular evidentiary facts offered to establish the elements of Dealing in Methamphetamine. Final Instruction 7 informed the jury that such factors as presence and acquiescence were proper matters for consideration in determining accomplice liability. As such, the instruction provided guidance to the jury in making its determination as to whether Fowler was an accomplice.

With respect to establishing the separate basis of liability, Final Instruction 7 did not lead the jury to believe that the State had met its burden of proof merely by presenting evidence of Fowler's presence at the crime scene and his failure to oppose commission of the crime. Indeed, the jury was specifically instructed via a separate portion of Final Instruction 7 as well as Final Instruction 10 that mere presence at a crime scene and acquiescence by a defendant are not sufficient to establish aiding, inducing, or causing a crime. Final Instruction 10 specified the requirement of "some conduct of an affirmative nature."[4] (App.59.)

Final Instruction 7 did not mislead the jury as to the applicable law, nor did the instruction invade the province of the jury to determine, by considering all the evidence presented, whether the elements of Dealing in Methamphetamine had been established. Fowler has demonstrated no abuse of the trial court's discretion in instructing the jury.

---

4. Fowler does not contend that Final Instruction 7 is an incorrect statement of law. In determining whether a person was an accomplice to the commission of a crime, our Supreme Court has "long considered the following four factors: (1) presence at the scene of the crime; (2) companionship with another engaged in criminal activity; (3) failure to oppose the crime; and (4) a defendant's conduct before, during, and after the occurrence of the crime." *Garland v. State*, 788 N.E.2d 425, 431 (Ind.2003).

## II. Sufficiency of the Evidence

■ Fowler claims that the State failed to present sufficient evidence to support either of his convictions. When reviewing the sufficiency of the evidence to support a conviction, we will consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). In so doing, we will not assess witness credibility and we will not weigh the evidence. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

With respect to Dealing in Methamphetamine, Fowler essentially concedes that Matlock manufactured methamphetamine at Fowler's residence. However, Fowler contends that any assistance he rendered to Matlock in manufacturing methamphetamine was inadvertent and unintentional. Fowler claims that all of the incriminating items belonged to Matlock and Fowler merely carried a bag into his house without knowing its contents. Fowler further claims that he subsequently "realized what was in the bag, instructed Matlock [to] go upstairs, do what he had to do, and then leave." Appellant's Brief at 18. He argues that this does not constitute conduct of an affirmative nature.

The State presented evidence that Fowler's residence was the site of an active methamphetamine lab. Methamphetamine precursors and paraphernalia were found in virtually every room of the small house. Fowler had carried at least some of the items into the house. Odors and vapors were readily detectable, and methamphetamine residue was found on a plate in the kitchen. Fowler essentially requests that we reweigh the evidence as to his intent to find that he blindly supplied the location for a methamphetamine lab. We decline to do so.

■ Fowler also argues that the evidence "fails to establish the fact that he ever possessed methamphetamine, either actually or constructively." Appellant's Brief at 19. He concedes that his police statement included his confession that he had smoked methamphetamine, arguably leading to the possession charge. However, he argues that the State failed to present evidence of his guilt that was independent from his confession and, consequently, that the State failed to establish the corpus delicti as is required to sustain his possession conviction.

■ The corpus delicti rule provides that a crime may not be proved based solely on a confession. *Malinski v. State,* 794 N.E.2d 1071, 1086 (Ind.2003). To warrant the admission of a confession, the State must provide an inference that a crime was committed, which may be established by circumstantial evidence. *Workman v. State,* 716 N.E.2d 445, 447 (Ind. 1999).

Here, Fowler admitted during his police interview that he had smoked methamphetamine on January 25, 2008, and had attempted to smoke methamphetamine a second time. He stated that he had used a piece of aluminum foil in the smoking process. The State produced evidence that aluminum foil with "burn mark residue" was recovered from Fowler's kitchen trash.[5] (Tr. 84.) Also, a plate with methamphetamine residue was found. This

---

**5.** Officer Kenneth Rose testified that burn mark residue is commonly found when methamphetamine is used. He explained: "one of the more predominant usage methods to ingest the methamphetamine is to put it on a piece of aluminum foil, heat the bottom of that aluminum foil resulting in the burn mark residue, and the vapor from the burning methamphetamine is inhaled." (Tr. 84.)

took place in a setting which could be described as an active methamphetamine lab. The State presented sufficient evidence to provide an inference that a crime was committed, so as to establish the corpus delicti.

### Conclusion

Fowler has not established that the trial court abused its discretion in instructing the jury. There is sufficient evidence to support Fowler's convictions.

Affirmed.

MATHIAS, J., and BARNES, J., concur.