**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Aug 14 2012, 8:53 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**RICHARD DENNING**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOSHUA P. LINDSEY, ) | |
| ) | |
| Appellant-Petitioner, ) | |
| ) | |
| vs. ) | No. 29A02-1112-PC-1183 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Respondent. ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Steven R. Nation, Special Judge
Cause No. 29D01-0912-PC-129

**August 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Joshua P. Lindsey ("Lindsey") appeals the denial of his petition for post-conviction relief from his convictions for robbery[1] as a Class B felony, criminal confinement[2] as a Class B felony, and resisting law enforcement[3] as a Class A misdemeanor. He raises the following restated issues:

I.      Whether Lindsey received the effective assistance of his appellate counsel because, he claims, his counsel failed to raise the issue of whether his convictions for both robbery and criminal confinement violated his right against double jeopardy under the Indiana Constitution; and

II.     Whether Lindsey received the effective assistance of his appellate counsel because, he contends, his counsel failed to argue that the trial court abused its discretion in instructing the jury.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts supporting Lindsey's conviction as set forth on his direct appeal are as follows:

> Due to recent robberies of CVS stores in the area, Officer Kruse from the Fishers Police Department was performing surveillance outside a CVS store on 116th Street in an unmarked car on an evening in March 2008. At around 9:45 p.m., Officer Kruse saw a man dressed in black first walking, then jogging across the CVS parking lot. The man broke into a run as he approached the sidewalk just short of the store entrance. As he entered the store at a run, the man raised his arm in such a manner that led Officer Kruse to believe he was brandishing a weapon. Officer Kruse radioed other police units that he believed an armed robbery was in progress at his location, and officers soon arrived.

> Inside the store, Katlin Kline ("Kline") was working as a cashier

---

[1] *See* Ind. Code § 35-42-5-1.

[2] *See* Ind. Code § 35-42-3-3.

[3] *See* Ind. Code § 35-44-3-3.

2

when the man, whom she later identified as Lindsey, ran into the store. Lindsey was wearing black pants, a black hoodie with the hood up, and a black bandana that covered part of his face. He pointed the gun at her and asked, "Where's the money," *Tr.* [at] 378, and Kline told him it was in the office. Lindsey then pointed the gun at her back and led her to the office. He made Kline knock on the door while he stood away from view of the door's window. The store supervisor, Beverly Helm ("Helm"), looked out the window, saw Kline, and opened the door. Lindsey shoved Kline in and ordered the two women to open the safe and move to the floor. Kline immediately moved to the floor. Helm opened the safe and moved to the floor. Lindsey ordered them to keep quiet and to keep their faces down. Kline and Helm heard him rummaging through the safe and taking money out. When Lindsey was done, he threatened, "[I]f you get up, you die," *id.* at 387, and then he left. The entire robbery was captured on surveillance cameras.

Officers Kruse, Shawn Wynn, and Mark Elder, each in separate cars, saw Lindsey run out of the store and across the parking lot. All three officers tried to stop Lindsey, and Officers Wynn and Elder yelled, "Police, stop," *id.* at 517, 580, but Lindsey continued to run. Officer Kruse drove his car ahead of Lindsey, who was still on foot, and stopped his car in a public lot near a car that was in the general direction to which Lindsey was running. He stepped out of his car and walked to the driver's side of the other car, intending to cut off and apprehend Lindsey. When Lindsey was within six to eight feet of the car, Officer Kruse identified himself as a police officer and ordered him to stop. At that point, Lindsey turned around and ran in a different direction. Officer Kruse saw other officers arriving and jumping out of their cars to pursue Lindsey on foot. His attention was drawn to the car to which Lindsey had been running, whose driver's side door was open approximately six inches and windows were tinted such that he could not see inside. Although the windshield was not tinted, Officer Kruse was unable to see into the back seat. Recognizing that there might be an accomplice in the car and concerned for officer safety, Officer Kruse opened the door wider so that he could "clear" the car out, that is, make sure "that there was nobody laying [sic] down in the back seat or on the back floorboard or in the driver or passenger area of the car." *Id.* at 313. While looking for a possible accomplice, Officer Kruse saw an activated handheld police scanner in the center console, a holster on the front floorboard, keys in the ignition, a plastic bag, and clothing. Without ever touching anything in the car or even sticking his head inside, Officer Kruse confirmed that no one was in the car. He then walked around to the front of the car, felt the hood, and found the engine compartment was still warm.

Meanwhile, other officers were still pursuing Lindsey. Although they lost sight of him for a few seconds when he entered a partially constructed building, the officers on foot could hear him hitting wood and other items as he ran through. Officer David Seward was chasing Lindsey in his car. As he closed in on Lindsey, he stepped out of his car, pointed his handgun at Lindsey, and told him to put his hands up. Lindsey finally complied after Officer Seward repeated the order multiple times. Officer Seward then ordered Lindsey down on the ground. Again, he had to repeat himself multiple times. At that point, Officer Wynn came up behind Lindsey and used physical force to get him to the ground. He then received assistance from another officer in handcuffing Lindsey.

After Lindsey was secured, the officers found a black BB gun in his pocket and a can of pepper spray in a holster on his waist. Upon following the path of the foot chase, a K–9 officer and his dog found a white garbage bag with cash in the amount of $3698 in the building through which Lindsey had run. The license plate number and the vehicle identification number verified that Lindsey was the owner of the car. Nothing was removed from the car until a search warrant was obtained. None of the officers saw any person who bore any resemblance to Lindsey during the chase.

*Lindsey v. State*, 916 N.E.2d 230, 233-34 (Ind. Ct. App. 2009), *trans. denied*.

The State charged Lindsey with robbery as a Class B felony, theft as a Class D felony, criminal confinement as a Class B felony, and resisting law enforcement as a Class A misdemeanor. The State also filed an information alleging Lindsey to be an habitual offender. A jury trial was held, at the conclusion of which, Lindsey was found guilty as charged. Lindsey subsequently stipulated to his prior convictions, and the trial court found him to be an habitual offender. The trial court sentenced him to twenty years for his robbery conviction, enhanced the sentence by thirty years for the habitual offender finding; twenty years for his criminal confinement conviction, to be served consecutively to the robbery conviction; and one year for his resisting law enforcement, to be served concurrently with the other sentences, for an aggregate sentence of seventy years. The

4

trial court vacated Lindsey's theft conviction based on double jeopardy concerns.

In his direct appeal, Lindsey was represented by S. Neal Ziliak ("Ziliak"), who raised four issues on appeal: (1) whether the trial court abused its discretion in removing a juror for cause; (2) whether the trial court erred in denying his *Batson*[4] challenge to the State's peremptory strike of a juror; (3) whether the trial court erred in denying his motion to suppress evidence because the inspection of his vehicle was illegal; and (4) whether his sentence was inappropriate in light of the nature of the offense and the character of the offender. *Id.* at 236. On November 9, 2009, this court affirmed Lindsey's convictions and sentence in a published opinion. *Id.* at 233-42.

Lindsey subsequently filed a pro se petition for post-conviction relief and a pro se amended petition for post-conviction relief. On July 8, 2011, he filed, by counsel, a second amended petition for post-conviction relief, in which he raised the issues that he received ineffective assistance of his appellate counsel because Ziliak failed to raise a double jeopardy claim and a jury instruction issue. During the evidentiary hearing on the petition, Ziliak testified as to how he prepares an appeal, including how he selects issues for appeal. *Tr.* at 6-7.[5] He testified that in his review of the trial record for Lindsey's appeal he did not see any glaring errors to challenge and that he selected the issues that he believed had the most merit for an appeal. *Id.* at 18, 21. Lindsey actually insisted that

---

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[5] We note that the appellate record contains transcripts from both the trial and the post-conviction proceedings and appendices from both the direct appeal and the current appeal from the post-conviction proceedings. Therefore, any reference to the post-conviction transcript will be *Tr.*, and any reference to the trial transcript will be to *Trial Tr.* Likewise, any reference to the post-conviction appendix will be to *Appellant's App.*, while any reference to the appendix from the direct appeal will be to *Appellant's Trial App.*

Ziliak raise the *Batson* issue and the motion to suppress issue. *Id*. at 15-17, 21. Ziliak testified that he had considered the double jeopardy issue that Lindsay claimed that he failed to raise, but Zilaik decided not to pursue it because the record and the law did not support it. *Id*. at 8-10, 12-14. He did not consider the jury instruction issue to be an obvious issue for appeal. *Id*. at 15. On November 22, 2011, the post-conviction court issued its findings of fact, conclusions thereon, and judgment, which denied Lindsey's petition for post-conviction relief and found that he failed to show that he received the ineffective assistance of his appellate counsel. Lindsey now appeals.

**DISCUSSION AND DECISION**

Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-

6

conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

We review ineffective assistance of trial counsel claims under the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id*. First, the petitioner must demonstrate that counsel's performance was deficient, which requires a showing that counsel's representation fell below an objective standard of reasonableness and denied the petitioner the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002). Second, the petitioner must demonstrate that he was prejudiced by counsel's deficient performance. *Id*. To show prejudice, a petitioner must show that there is a reasonable probability that the outcome of the trial would have been different if counsel had not made the errors. *Id*. A probability is reasonable if it undermines confidence in the outcome. *Id*.

We presume that counsel rendered adequate assistance and give considerable discretion to counsel's choice of strategy and tactics. *Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002). "Isolated mistakes, poor strategy, inexperience, and instances of bad

judgment do not necessarily render representation ineffective." *Id*. "If we can resolve a claim of ineffective assistance of counsel based on lack of prejudice, we need not address the adequacy of counsel's performance. *Fisher*, 878 N.E.2d at 463-64.

The standard of review for claims of ineffective assistance of appellate counsel is the same as for trial counsel in that the defendant must show appellate counsel was deficient in his or her performance and that the deficiency resulted in prejudice. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008) (citing *Strickland*, 466 U.S. at 686). Ineffective assistance at the appellate level of proceedings generally falls into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Wright*, 881 N.E.2d at 1023 (citing *Bieghler v. State*, 690 N.E.2d 188, 193-95 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). When evaluating a claimed deficiency in appellate representation due to an omission of an issue, a post-conviction court is properly deferential to appellate counsel's choice of issues for appeal "unless such a decision was unquestionably unreasonable." *Hampton v. State*, 961 N.E.2d 480, 491-92 (Ind. 2012) (quoting *Bieghler,* 690 N.E.2d at 194.) Such deference is appropriate because the selection of issues for direct appeal "is one of the most important strategic decisions of appellate counsel." *Id.* (quoting *Bieghler,* 690 N.E.2d at 194.). "'Appellate counsel's performance, as to the selection and presentation of issues, will thus be presumed adequate unless found unquestionably unreasonable considering the information available in the trial record or otherwise known to the appellate counsel.'" *Id*. at 491-92. (quoting *Ben–Yisrayl,* 738 N.E.2d at 261). In crafting an appeal, counsel must choose those issues which appear from the face of the record to be most availing. *Id*. at 492. Thus, to prevail

in such a claim in post-conviction proceedings, it is not enough to show that appellate counsel did not raise some potential issue; instead, the defendant must show that the issue was one which a reasonable attorney would have thought availing. *Id.*

## I. Double Jeopardy

Lindsey argues that he received ineffective assistance of his appellate counsel because his counsel failed to raise the issue of whether his convictions and sentences for both robbery and criminal confinement constituted a double jeopardy violation. He contends that his convictions for both of these offenses violated the prohibition against double jeopardy under the Indiana Constitution because the same evidence was used to establish the elements of both offenses. Lindsey further asserts that, in the present case, the criminal confinement established by the evidence at trial was the same confinement required to commit the robbery, which violates the actual evidence test under the Indiana Constitution.

Article I, section 14 of the Indiana Constitution provides that, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). *Bunch v. State*, 937 N.E.2d 839, 845 (Ind. Ct. App. 2010), *trans. denied.* In *Richardson,* our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Richardson*, 717 N.E.2d at 49

(emphasis in original). Here, Lindsey claims that his convictions constituted double jeopardy under the "actual evidence" test.

Under the "actual evidence" test, a defendant must demonstrate a *reasonable possibility* that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Bunch*, 937 N.E.2d at 845. "Application of this test requires the court to 'identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.]'" *Lee v. State,* 892 N.E.2d 1231, 1234 (Ind. 2008) (quoting *Spivey v. State,* 761 N.E.2d 831, 832 (Ind. 2002)). Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. *Id.* The term "reasonable possibility" "turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions." *Id.* at 1236.

In order to convict Lindsey of robbery as a Class B felony, the State was required to prove beyond a reasonable doubt that Lindsey knowingly or intentionally took property from the presence of Kline and Helm by threatening the use of force on any person while armed with a deadly weapon. Ind. Code § 35-42-5-1. In order to convict Lindsey of criminal confinement as a Class B felony, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally confined Kline and Helm without their consent while armed with a deadly weapon. Ind. Code § 35-42-3-3. Confinement is not a lesser included offense of robbery. *Polk v. State*, 783 N.E.2d 1253, 1258 (Ind. Ct. App. 2003), *trans. denied*. "'Generally, double jeopardy does not prohibit

10

convictions for criminal confinement and robbery when the facts indicate that the confinement was more extensive than that necessary to commit the robbery. In these circumstances, criminal confinement is a separate criminal transgression.'" *Buchanan v. State*, 913 N.E.2d 712, 721 (Ind. Ct. App. 2009) (quoting *Benavides v. State,* 808 N.E.2d 708, 712 (Ind. Ct. App. 2004) (citations omitted), *trans. denied.*), *trans. denied*.

Here, the evidence at trial showed that Lindsey entered the CVS, pointed a gun at Kline, and asked her where the money was located. She told him it was in the office, and Lindsey again pointed the gun at her, forcing her to the office. After gaining access to the office, Lindsey made Kline get on the floor and ordered Helm to open the safe. He then made Helm get on the floor. Lindsey removed the money from the safe, and as he was leaving the office, he told the employees, "if you get up, you die." *Trial Tr.* at 387. Based on this evidence, the jury could reasonably have based Lindsey's criminal confinement conviction on the evidence that he pointed the gun at Kline and forced her to walk back to the office or on the evidence that Lindsey told the employees, "if you get up, you die" as he was leaving in order to ensure they remained on the floor, and the jury could have reasonably based Lindsey's robbery conviction on the evidence that he pointed a gun at Helm and Kline in the office, ordered Helm to open the safe, and took the money from the safe. We therefore conclude that each offense was established by separate and distinct facts, and Lindsey's conviction for criminal confinement and robbery did not violate double jeopardy. Because we hold that his convictions did not constitute double jeopardy, we find that Lindsay did not receive the ineffective assistance of his appellate counsel as he cannot show that a different outcome would have been

11

attained had Ziliak raised the double jeopardy issue on his direct appeal.

## II. Jury Instruction

Lindsey argues that he received ineffective assistance of his appellate counsel because his counsel failed to raise the issue of whether the trial court abused its discretion in instructing the jury regarding the definition of "deadly weapon." He contends that one of the instructions defining "deadly weapon" should not have been given because it invaded the province of the jury by unduly emphasizing one particular evidentiary fact. Lindsey therefore asserts his appellate counsel was ineffective for failing to raise this issue in his direct appeal because, had he raised the issue, there is a reasonable probability that his convictions would have been reversed.

"'The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict.'" *Fowler v. State*, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009) (quoting *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind. 2001)). Jury instruction is a matter assigned to trial court discretion, and an abuse of that discretion occurs when instructions, taken as a whole, mislead the jury as to the applicable law. *Id.* (citing *Ham v. State*, 826 N.E.2d 640, 641 (Ind. 2005)). Indiana courts "have 'long disapproved' instructions that unduly 'emphasize one particular evidentiary fact, witness, or phase of the case.'" *Id.* (quoting *Ham*, 826 N.E.2d at 641-42). An instruction as to what evidence warrants an inference of guilt clearly invades the jury's province. *Id.* (citing *Crawford v. State,* 550 N.E.2d 759, 761 (Ind. 1990)). Jury instructions are to be considered as a whole, and we will not find that the trial court abused its discretion unless we determine

that the instructions taken as a whole misstate the law or otherwise mislead the jury. *Davis v. State*, 835 N.E.2d 1102, 1113 (Ind. Ct. App. 2005), *trans. denied*.

In the present case, the specific instruction given with which Lindsey takes issue stated as follows:  "Although not firearms, pellet or BB guns can be considered deadly weapons within the statute."  *Appellant's Trial App*. at 145.  In addition to this instruction, the trial court also provided the following instructions in order to inform the jury on how to determine whether a "deadly weapon" was used:

> The term "deadly weapon" is defined by law as meaning a loaded firearm or unloaded firearm or a weapon, device, taser or electronic stun weapon, equipment, chemical substance, or other material that in the manner it is used, or could ordinarily be used, is readily capable of causing harm.
>
> The question of whether a weapon is a deadly weapon is determined from a description of the weapon, the manner of its use, and the circumstances of the case.
>
> "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes:  (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; permanent or protracted loss of impairment of the function of a bodily member or organ; or loss of a fetus.

*Id*. at 144, 146-47.  The jury was also instructed as to the State's burden of proof and that the State was required to prove all of the elements of the charged offenses beyond a reasonable doubt.  *Id*. at 149.

At trial, Lindsey's counsel objected to the instruction and argued that it invaded the province of the jury.  After Lindsey's conviction, his appellate counsel, Ziliak, did not make any such argument on direct appeal.  During the post-conviction hearing, Ziliak testified that he did not consider that the instruction highlighted a specific piece of evidence, but did believe that the instruction was a correct statement of the law.  *Tr*. at

13

15. When the disputed jury instruction is considered as a whole with the other instructions given regarding the definition of a deadly weapon, it did not invade the province of the jury because the jury was not told that the BB gun used in the case was actually a deadly weapon. The instructions as a whole left the jury to decide on its own whether the BB gun qualified under the circumstances of the case as a deadly weapon. As the jury instructions as a whole did not warrant an inference of guilt upon the finding of certain facts, we conclude that the complained-of jury instruction did not constitute a mandatory instruction that clearly invaded the jury's province. Therefore, because we conclude that the jury was properly instructed as to the definition of a "deadly weapon," we find that Lindsay did not receive the ineffective assistance of his appellate counsel as he cannot show that a different outcome would have been attained had Ziliak raised the jury instruction issue on his direct appeal. The post-conviction court did not err in denying Lindsey's petition.

Affirmed.

BROWN, J., concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JOSHUA P. LINDSEY,                              )
                                               )
    Appellant-Petitioner,                )
                                               )
        vs.                              )    No.  29A02-1112-PC-1183
                                               )
STATE OF INDIANA,                              )
                                               )
    Appellee-Respondent.                 )

**BAKER, Judge, concurring in part and dissenting in part.**

I agree with the majority's conclusion that Lindsey's appellate counsel was not ineffective for failing to raise the jury instruction issue on direct appeal. However, I respectfully part ways with the majority's determination that counsel was not ineffective on the basis that no double jeopardy violation occurred with regard to convicting and sentencing Lindsey for both the confinement and robbery offenses. More particularly, I cannot agree with the notion that "each offense was established by separate distinct facts, and Lindsey's conviction for criminal confinement and robbery did not violate double jeopardy." Slip op. at 11.

The basic facts here are that Lindsey, the lone robber, entered the pharmacy, pointed a gun at Kline, forced her to the office to get the manager to open the office door, took money from the safe while ordering the victims to lie on the floor, and told the victims that they would be killed if they got up. Tr. p. 375-844, 436-44.

In my view, the cases on which the State relies for the proposition that no double

15

jeopardy occurred in this instance are distinguishable from the circumstances here. To illustrate, in Hopkins v. State, 759 N.E.2d 633, 640-41 (Ind. 2001), the evidence established that the robbers forced the victims into the basement of a residence and robbed them. One of the robbers subsequently searched the house while the other robber held the victims at gunpoint. Our Supreme Court determined that the evidence of forcing the victims to the basement before robbing them, keeping them in the basement while ransacking the house, and keeping the victims confined for a protracted period of time, supported the confinement offense separate from the robbery.

Unlike the situation in Hopkins, Lindsey forced Kline to get the manager to open the door and then took the money. The entire episode lasted only a few minutes. In my view, the confinement of Kline was no more than what was required to commit the robbery. In other words, the confinement was contemporaneous with the robbery. As a result, the conviction and sentence for both robbery and confinement violated double jeopardy principles set forth in Article 1, Section 14 of the Indiana Constitution under the actual evidence test. See Buchanan v. State, 913 N.E.2d 712, 714 (Ind. Ct. App. 2009) (holding that the confinement was no more than what was required to commit the robbery when the defendant directed bank employees to put money into a duffle bag and then ordered the employees to lie on the floor).

I acknowledge that our Supreme Court and this court have previously held that double jeopardy principles may not be implicated when two victims are involved. However, those cases involve separate counts for each victim. Bald v. State, 766 N.E.2d 1170, 1172 (Ind. 2002); Mathews v. State, 824 N.E.2d 713, 727 (Ind. Ct. App. 2005). In

16

this case, Lindsey was charged with robbery and confinement but the charging informations listed each victim in each count. That said, I must conclude that Lindsey's counsel on direct appeal was ineffective for failing to raise the double jeopardy issue with regard to the robbery and confinement convictions and sentences. I vote to grant Lindsey's petition for post-conviction relief in part and would set aside Lindsey's conviction and sentence for confinement.