**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**CHARLES W. LAHEY**
South Bend, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Sep 14 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARLOS E. ODOM, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 71A05-1203-CR-121 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-1009-FB-114

**September 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Eighty-five-year-old William Maciejewski responded to a knock at the front door, only to be shoved to the floor by a man who forcefully entered his house, threatened to shoot him, and stole his gun and some cash. A neighbor told police that she recognized the man as Carlos E. Odom. Four months later, police stopped Odom for a traffic infraction, and the ensuing search produced Maciejewski's stolen gun from the glove compartment.

The State charged Odom with class B felony robbery, class B felony burglary, class A misdemeanor carrying a handgun without a permit, class A misdemeanor driving while suspended, and class C misdemeanor altered interim license plate. He eventually was convicted by a jury on all counts. He now appeals, claiming that the trial court erred in instructing the jury on the "breaking" element of burglary and in admitting testimony regarding the officer's state of mind at the time of the traffic stop. We affirm.

**Facts and Procedural History**

In May 2010, eighty-five-year-old William Maciejewski was talking to his sister on the phone when he heard a knock at the front door. He looked out the window and saw a tall, slender black man holding what appeared to be a Crime Stoppers card. When Maciejewski opened the storm door slightly to look at the card, the man shoved his way inside, pushing the elderly Maciejewski backwards to the floor and causing him to black out momentarily. When Maciejewski regained consciousness, he saw the man standing over him, putting on gloves. The man searched the house, took money from Maciejewski's wallet, and pressed something against Maciejewski's leg, threatening to shoot him. He asked Maciejewski if he

2

owned a gun, and Maciejewski responded affirmatively and told him where he kept it. The man retrieved Maciejewski's handgun, threatened him again, searched the house some more, and left. Maciejewski suffered injuries to his groin and hamstring as a result of the incident.

Meanwhile, Maciejewski's sister, who was still on the phone, overheard the incident, called 911, and sent her son to check on him. Shortly thereafter, police arrived, and a neighbor told police that she had seen the man approach Maciejewski's front door and recognized him as Odom, her former high-school classmate. A few days later, the vision- and hearing-impaired Maciejewski was unable to positively identify Odom from a photo array.

In September 2010, South Bend Police Officer Russell Lupica spotted Odom's parked vehicle and noted that the interim license plate was not properly displayed. Upon closer examination, the interim plate appeared to have been altered. Officer Lupica called for backup, and Officer Brad Rohrscheib arrived on the scene. At that point, Odom got into his vehicle and drove away. Officers Lupica and Rohrscheib followed in their vehicles and eventually stopped Odom. When they asked for his insurance card and proof of purchase documents, Odom exited the vehicle and unsuccessfully searched through a backpack in his trunk. He then searched his back seat, again to no avail. When he went to search his glove compartment, he positioned his face very close to it, and Officer Rohrscheib could not see his hands or the inside of the glove compartment. Odom eventually pulled out some papers, placed them on the seat, and locked the glove compartment. Moments later, Officer Rohrscheib conducted a patdown search of Odom. Meanwhile, Officer Lupica determined

that, per department policy, Odom's vehicle should be impounded due to the irregularities on the interim license plate. While he waited for a tow truck, Officer Lupica conducted an inventory of the vehicle's contents and found a handgun in the glove compartment that was later determined to be the handgun that had been stolen from Maciejewski.

The State charged Odom with class B felony robbery, class B felony burglary, class A misdemeanor carrying a handgun without a permit, class A misdemeanor driving while suspended, and class C misdemeanor altered interim license plate. Odom was eventually found guilty on all counts. He now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

### *I. Jury Instruction*

Odom was convicted of class B felony burglary, which occurs when a person breaks and enters a dwelling with intent to commit a felony in it. Ind. Code § 35-43-2-1(1)(B)(i). He contends that the trial court erred in instructing the jury on the "breaking" element of burglary.[1] We review a trial court's decision to give a jury instruction using an abuse of discretion standard. *Eberle v. State*, 942 N.E.2d 848, 861 (Ind. Ct. App. 2011), *trans. denied.* With respect to jury instructions, an abuse of discretion occurs where the instructions, taken as a whole, mislead the jury as to the applicable law. *Fowler v. State*, 900 N.E.2d 770, 773 (Ind. Ct. App. 2009). In conducting our review of a challenged instruction, we consider: (1) whether the instruction correctly states the law; (2) whether the evidence supports giving the

---

[1] At the outset, we note that Odom has failed to include the instruction with verbatim objections in the argument section of his appellate brief as required under Indiana Appellate Rule 46(A)(8)(e).

4

instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Johnson v. State*, 959 N.E.2d 334, 338 (Ind. Ct. App. 2011), *trans. denied* (2012).

Odom does not challenge any of the foregoing. Rather, he claims that State's Instruction No. 5 misled the jury by "creat[ing] an asymmetric emphasis upon the testimony of Maciejewski." Appellant's Br. at 6.[2] *See Fowler*, 900 N.E.2d at 773 (stating that our courts have "long disapproved [of] instructions that unduly emphasize one particular evidentiary fact, witness, or phase of the case.") (citation and internal quotation marks omitted). State's Instruction No. 5 reads, "A breaking may be proven by showing that even the slightest force was used to gain unauthorized entry, including opening an unlocked door or pushing a door which is slightly ajar." Appellant's App. at 9.

At trial, Maciejewski testified that he opened his storm door slightly to look at the card that Odom was holding and that Odom forcibly shoved the door open, causing him to fall backward and sustain injuries. In the context of the jury instructions as a whole, the "breaking" instruction was given to the jury as part of a list of definition instructions pertaining to the offenses charged, i.e., "deadly weapon," "firearm," "dwelling," "property of another person," "exert control," "unauthorized," "knowingly," and "intentionally." Tr. at 264-66. Simply put, the instruction was given in a context that did not overemphasize certain testimony in the case. Consequently, we conclude that the trial court acted within its

---

[2] As support for his argument, Odom cites an unpublished, noncitable memorandum decision in violation of Indiana Appellate Rule 65(D).

discretion in giving State's Instruction No. 5.

## II. *Admissibility of Officer's Testimony*

Odom also challenges the trial court's admission of testimony from Officer Rohrscheib concerning his state of mind during the traffic stop. Notably, Odom has failed to comply with Indiana Appellate Rule 46(A)(8)(d), which requires that the argument section of his appellate brief contain citation "to the pages of the Transcript where the evidence was identified, offered, and received." He also has failed to specifically identify the challenged testimony, claiming only that the officer's testimony that he "feared for his safety during his stop of Odom was irrelevant and prejudicial." Appellant's Br. at 6. As such, he has waived this issue for appeal.

Waiver notwithstanding, the trial court has broad discretion in ruling on the admission or exclusion of evidence. *Gutierrez v. State*, 961 N.E.2d 1030, 1034 (Ind. Ct. App. 2012). As such, we review the trial court's decision to admit evidence for an abuse of discretion, which occurs only when the ruling is clearly against the logic, facts, and circumstances presented. *Id*.

During direct examination, Officer Rohrscheib described Odom's behavior in searching first the trunk, then the back seat, and ultimately the glove compartment for his elusive insurance card and proof of purchase papers. When the officer described Odom's peculiar proximity to the glove compartment, the prosecutor asked if the behavior gave him "any concern," and defense counsel objected. Tr. at 137. After a sidebar conference, the trial court overruled the objection, and the officer provided lengthy testimony regarding his

6

suspicions. He explained in part,

A.   I was concerned for my safety, because he was so close I could not see his hands. I recall trying to lean one way o[r] lean the other way to try and peer over either one of his shoulders, so I could see his hands. In my experience as a law enforcement officer, the hands are the most dangerous thing, because they can have a weapon or attack you or anything. I mean that's the danger that we look for is try to watch the hands, and I could not see his hands, and I could not see what he was doing inside the glove box or see into the glove box, because he was so close and leaned over blocking my view into the glove box.

….

Usually, [the registration or proof of insurance is] in the glove box or in the a [sic] center console, and usually once you ask for it then they're going to reach across, you know, full arm extended and into the glove box. I mean, it's not typical that someone's going to huddle over where they're reaching to get that paper.

Q.   Okay. So when you saw this occurring what did you do?

A.   After he pulled some papers out, you know, I could see that he pulled some papers out of there because he set them on the seat where I could see the seat, and then he closed it, and then he locked the glove box. And, at that point, I had him step back away from the vehicle to pat him down for weapons, since I could not see what he put in or took out of the glove box.

Q.   So, at that point, you said you did do a pat down?

A.   Correct.

*Id*. at 138-40.

Odom objected to Officer Rohrscheib's testimony on relevancy grounds. Relevant evidence is generally admissible. Ind. Evidence Rule 402. Evidence is relevant if it "has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind.

7

Evidence Rule 401.

The challenged testimony was relevant to explain why Officer Rohrscheib decided to conduct a patdown search of Odom. However, the patdown search of Odom was not relevant to the discovery of the handgun because: (1) the handgun was found in the glove compartment and not on Odom's person; and (2) Officer Lupica testified that the inventory search, which produced the handgun, was performed as a matter of policy whenever a person has irregularities on the face of his interim license plate. Thus, Odom's suspicious behavior was not the catalyst for the inventory search that produced the contraband. As such, Officer's Rohrscheib's testimony about his safety concerns due to Odom's peculiar behavior was irrelevant.

Nevertheless, based on the overwhelming independent evidence identifying Odom as the perpetrator of the crimes against Maciejewski, i.e., the neighbor's eyewitness testimony and the discovery of Maciejewski's handgun in Odom's glove compartment, we find the error to be harmless. *See Gaby v. State*, 949 N.E.2d 870, 881 (Ind. Ct. App. 2011) (stating that error in admission of evidence is harmless if probable impact on the jury is sufficiently minor so as not to affect the defendant's substantial rights); *see also Burks v. State*, 838 N.E.2d 510, 520 (Ind. Ct. App. 2005) (concluding that when irrelevant evidence is viewed in light of overwhelming evidence of guilt, its admission can safely be relegated to the status of harmless error), *trans. denied* (2006). Based on the foregoing, we find no reversible error in the trial court's admission of Officer Rohrscheib's state-of-mind testimony. Accordingly, we affirm.

Affirmed.

RILEY, J., and BAILEY, J., concur.