**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 28 2014, 10:11 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW J. McGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DEBRA SUE MILES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1304-CR-179 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1110-FA-1104

**February 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Debra Sue Miles appeals her conviction of Class A felony dealing in methamphetamine.[1]  She argues the State did not present sufficient evidence she committed the crime.  We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 2, 2011, police arrived at Miles' apartment in search of a person believed to be staying there with her son, Larry.  When police arrived, they smelled an odor consistent with the manufacture of methamphetamine.  Police knocked on the door of Miles' apartment for ten to fifteen minutes, and heard rustling around and whispering inside the apartment.  The police used a battering ram to open the door.

Once inside they found Miles, Debra Monyhan, and Larry on a bed just inside the front door in varioius rooms in the apartment.  Police found items indicative of methamphetamine manufacturing, including red flakes indicative of ground pseudoephedrine pills, Liquid Fire, multiple containers of salt, an HCl generator, and coffee filters.  The police also found methamphetamine, methadone, and marijuana in the apartment.  In the alley near Miles' apartment, the police found other precursors and a trash bag containing what responding Officer Dave Barron testified was a "one-pot meth lab" (Tr. at 195) inside.

The State charged Miles with two counts of Class A felony dealing in methamphetamine, Class D felony possession of a controlled substance,[2] and Class A misdemeanor possession of marijuana.[3]  The State also alleged Miles was an Habitual

---

[1]  Ind. Code § 35-48-4-1.1(b).
[2]  Ind. Code § 35-48-4-7(a).
[3]  Ind. Code § 35-48-4-11(b).

Offender. At the end of Miles' jury trial, the trial court dismissed all the charges except one count of Class A felony dealing in methamphetamine. The jury found Miles guilty and Miles pled guilty to being an Habitual Offender. The court imposed a thirty-year sentence for dealing, with a thirty-year enhancement for the habitual substance offender adjudication.

## DISCUSSION AND DECISION

When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when we are confronted with conflicting evidence, we consider it most favorably to the judgment. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

To prove Miles committed Class A felony dealing in methamphetamine, the State had to prove she knowingly or intentionally manufactured, financed the manufacture of, delivered, or financed the delivery of methamphetamine in a quantity of three grams or more. Ind. Code § 35-48-4-1.1(b). At trial, the State argued Miles committed the crime as an accomplice. Under the accomplice liability theory, "[a] person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that

3

offense." Ind. Code § 35-41-2-4. We consider four factors to determine whether a defendant acted as an accomplice: "(1) presence at the scene of the crime; (2) companionship with another at scene of crime; (3) failure to oppose commission of crime; and (4) course of conduct before, during, and after occurrence of crime." *Castillo v. State*, 974 N.E.2d 458, 466 (Ind. 2012). The mere fact a defendant was present during a crime and did not oppose the crime is not sufficient to convict her based on accomplice liability. However, "presence at and acquiescence to a crime, along with other facts and circumstances" may be considered. *Id*. Miles argues she was merely present in the apartment when the police discovered her son in the process of making methamphetamine. We disagree.

Miles was present and "trying to be asleep" (Tr. at 153) when police arrived, and she did not answer the door for ten to fifteen minutes even though the police were "beating on the door." (*Id*. at 151.) Officer Jeff Taylor testified that, after knocking on the door, he could hear "voices and you could hear people moving around." (*Id*. at 42.) While Larry hid the materials he used to make methamphetamine, Miles "just [sat] there on the bed." (*Id*. at 133.) To enter the apartment, the police had to use a "ram" to open the door. (*Id*. at 48.)

In Miles' bedroom, the police found methamphetamine and items used to produce methamphetamine, including a HCl generator made from a green two-liter bottle, a two-pound container of salt, and pseudoephedrine tablets. The police found other precursors in Larry's bedroom and in the only bathroom in the apartment. There was a chemical smell so strong that other tenants in the apartment building "came down choking and vomiting actually on the sidewalk right in front of, right in front of the house." (*Id*. at 41.) One

4

officer testified the smell was consistent with the smell emitted from the manufacture of methamphetamine. However, despite these strong odors detectable to people outside the apartment, Miles told police "[s]he had no clue what was going on inside the place. She pretty much took her medication and went to bed and didn't know anything else." (*Id*. at 78.)

There was sufficient evidence Miles was an accomplice to Larry's methamphetamine manufacturing. *See Fowler v. State*, 900 N.E.2d 770, 775 (Ind. Ct. App. 2009) (evidence sufficient to support conviction of dealing in methamphetamine based on accomplice liability when police found precursors in almost every room, vapors consistent with methamphetamine production were readily apparent, and defendant helped carry precursors into the house). Miles' arguments to the contrary are invitations to reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court will not reweigh evidence or judge the credibility of witnesses). Accordingly, we affirm Miles' conviction of Class A felony dealing in methamphetamine.

Affirmed.

VAIDIK, C.J., concurs.

RILEY, J., dissents with separate opinion.

5

# IN THE
# COURT OF APPEALS OF INDIANA

DEBRA SUE MILES,                          )
                                          )
    Appellant-Defendant,              )
                                          )
        vs.                       )    No.  82A01-1304-CR-179
                                          )
STATE OF INDIANA,                         )
                                          )
    Appellee-Plaintiff.               )

**RILEY, Judge, dissenting**

I respectfully dissent from the majority's decision to affirm Miles' conviction for dealing in methamphetamine.  Ind. Code §§ 35-48-4-1.1(a)(1)(A), -(b)(1).  Based on the record before me, I do not find that there is evidence beyond a reasonable doubt establishing that Miles "knowingly or intentionally aid[ed], induce[d], or cause[d] another person to" manufacture methamphetamine.  I.C. § 35-41-2-4.

In order to uphold a conviction under the theory of accomplice liability, there must be evidence of affirmative conduct by a defendant, "either in the form of acts or words, from which an inference of common design or purpose to effect the commission of a crime may reasonably drawn." *Vandivier v. State*, 822 N.E.2d 1047, 1054 (Ind. Ct. App. 2005), *trans. denied*.  It is well-settled that a defendant's mere presence or failure to oppose the commission of a crime may be considered in light of the totality of facts and circumstances as

6

tending to show participation but, standing alone, are insufficient to establish accomplice liability. *Id.*

The evidence establishes that, at the time of her arrest, Miles was fifty-four years old and suffered from numerous health impairments. Her adult son, Larry, had moved into her apartment following his release from prison several months earlier. Both Larry and Miles' step-cousin, Monyhan, who was visiting Miles when police arrived, explained to police and testified during Miles' trial that Miles had absolutely no involvement in manufacturing methamphetamine. In a sworn affidavit, Larry claimed responsibility "for any and all illegal items found" in Miles' apartment and stated that Miles "told me not to have illegal items in her home[,]" but Miles "was very sick and I did what I wanted to do and she couldn't stop me." (Appellant's App. p. 27). Although Larry admitted that he had manufactured methamphetamine on prior occasions, he testified that this was the first time he had done so in Miles' apartment, so she was not aware of what he was doing. Additionally, Larry and Monyhan both testified that, as the police were beating on the door, Miles was lying in bed and did nothing to help Larry discard the drugs or hide the precursors. Larry explained in detail as to how and where he hid the items recovered when police searched Miles' apartment, including that he brought the green HCl generator bottle and Liquid Fire into the house that night and hid the green bottle in Miles' room as the police were knocking; that he took everything from his pockets and shoved it into the laundry basket before lying down on the bed; that the scales belonged to him; that he hid the coffee filters in the gray storage tub full of his clothes; and that he had taken the bag of trash from his friend's car and dumped it

7

in the alley.

The majority relies on *Fowler v. State*, 900 N.E.2d 770 (Ind. Ct. App. 2009), where this court upheld a conviction under accomplice liability for dealing in methamphetamine. Similar to the facts in *Fowler*, Larry used Miles' residence as a methamphetamine lab, police found methamphetamine precursors in each room of the apartment, the apartment had a strong chemical odor, and police discovered finished methamphetamine product in the home. *See id.* at 775. However, unlike in *Fowler* where the defendant actually carried a bag of precursors into his house for a friend, there is no evidence that Miles ever handled or obtained any ingredients, that she assisted Larry in procuring any materials, or—even if she was aware of his activities—that she consented to Larry bringing such items into her home. *See id.*

Both the State and the majority emphasize the finding of methamphetamine precursors in Miles' bedroom as indicative of Miles' role in "provid[ing] the kitchen" for Larry. (State's Br. p. 6). However, they disregard the non-traditional layout of Miles' apartment. The apartment consists of a kitchen, a bathroom, and two other rooms. Miles slept in the middle room, which also doubled as a TV/living room area; the back room served as Larry's bedroom. Thus, Miles did not have privacy or exclusive use of her "bedroom," so there is little significance in the finding of precursors. The State also argues—and the majority agrees—that Miles neglected to turn Larry into the police or answer the door when the police were knocking, but this does not amount to *affirmative* conduct undertaken by Miles in order to facilitate Larry's drug production.

8

The State presented evidence that methamphetamine and precursors were found in the shared residence of Miles and Larry but set forth no other evidence to establish that Miles was more than merely present in her own home. It is not the role of this court to reweigh evidence or assess witness credibility, but there must be evidence in the record to show that Miles *affirmatively* acted to aid, induce, or cause Larry to manufacture methamphetamine. *See Green v. State*, 937 N.E.2d 923, 927, 930 (Ind. Ct. App. 2010), *trans. denied.* Here, there is no such evidence. Based on the foregoing, I conclude that the State failed to present evidence beyond a reasonable doubt to uphold Miles' conviction for dealing in methamphetamine and would reverse.